**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KATHERINE MODESITT COOPER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERRICK RUNELL WOODS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A03-1404-CR-124 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Samuel L. Cappas, Judge
Cause No. 45G04-1209-FA-21

**October 21, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Derrick Woods appeals his conviction for Dealing in a Narcotic Drug,[1] a class B felony. Woods argues that the trial court abused its discretion by admitting evidence that was obtained following what Woods contends was an illegal investigatory stop and that the evidence was insufficient to support the conviction. Woods also argues that the trial court abused its discretion during the sentencing process. Finding no error, we affirm.

FACTS

On September 13, 2012, Munster Police Officer Timothy Nosich was on patrol when he observed Woods exit a taxi cab and begin to run. Officer Nosich recognized Woods from a prior police contact and had been investigating Woods after multiple confidential informants reported that Woods had been selling heroin in Munster. Furthermore, approximately a week before the encounter in question, Officer Nosich had received a bulletin from the Cook County Intelligence Unit in Illinois, bearing Woods's photograph and indicating that Woods was a suspected heroin dealer in Illinois.

Officer Nosich watched Woods as he slowed to a walk, and the officer observed that Woods was talking on a cell phone and had something balled up in his right hand. Based upon Officer Nosich's knowledge of Woods and the fact that Woods was talking on a cell phone, the officer suspected that the item Woods held in his hand was narcotics.

Officer Nosich exited his vehicle, an unmarked vehicle bearing lights, sirens, and a spotlight. The officer was wearing his full police uniform. Officer Nosich approached Woods and asked if he could speak with him. Woods said, "For what?" and continued

---

[1] Ind. Code § 35-48-4-1(a)(2)(C).

2

walking. Tr. p. 38. Officer Nosich again asked if he could speak with Woods and Woods again replied, "For what?" Id. Woods then began to run away, fleeing from Officer Nosich, who pursued Woods on foot. Officer Nosich ordered Woods to stop, yelling "police," "Derrick," and "Champagne," which was Woods's nickname, but Woods continued to run. Id. at 39.

Eventually, Officer Nosich caught up to Woods, deployed his taser, and took Woods into custody. When the taser deployed, a bag fell out of Woods's hand. It was later determined that the bag held fifty individual packages of heroin, with each individual package weighing .06 grams, for a total weight of 2.03 grams of heroin. Officer Nosich also recovered two cell phones from Woods.

On September 15, 2012, the State charged Woods with class B felony dealing in a narcotic drug. On March 1, 2013, Woods filed a motion to suppress the evidence seized by Officer Nosich, arguing that it was the result of an illegal investigatory stop. The trial court denied the motion. Woods filed a motion to reconsider the motion to suppress on January 23, 2014, which the trial court denied. On February 4, 2014, a jury found Woods guilty as charged. Following a February 25, 2014, sentencing hearing, the trial court imposed a ten-year sentence, with nine years executed and one year suspended to probation. Woods now appeals.

## DISCUSSION AND DECISION

### I. Admission of Evidence

First, Woods argues that the trial court erroneously admitted the evidence seized by Officer Nosich. Specifically, he argues that Officer Nosich conducted an illegal investigatory stop and that the evidence seized thereby should not have been admitted.

Woods proceeded to trial after the trial court denied his motion to suppress this evidence. Inasmuch as direct review of the denial of a motion to suppress is proper only when the defendant files an interlocutory appeal, Clark v. State, 994 N.E.2d 252, 259 (Ind. 2013), Woods's appeal on this issue is best framed as a challenge to the admission of the evidence at trial. The admission of evidence at trial is a matter left to the discretion of the trial court. Id. at 259-60. We review these determinations for abuse of that discretion, and will reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. Id. at 260.

The United States Supreme Court has held that a police officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968). Indiana has adopted the Terry standard for the purpose of determining the legality of an investigatory stop under Article 1, section 11 of the Indiana Constitution. Wilson v. State, 670 N.E.2d 27, 29 (Ind. Ct. App. 1996). Reasonable suspicion "entails some minimal level of objective justification for making a stop—that is, something more than an inchoate and unparticularized suspicion or 'hunch,' but less than the level of

4

suspicion required for probable cause." Id. Whether an officer had reasonable suspicion is a fact-sensitive matter, and when evaluating the validity of an investigatory stop, we must consider the totality of the circumstances. Id.

During a consensual encounter between a police officer and a citizen, the citizen is free to disregard the officer and walk away. Overstreet v. State, 724 N.E.2d 661, 663 (Ind. Ct. App. 2000). Only when the individual is no longer free to leave does an investigatory stop begin. Luster v. State, 578 N.E.2d 740, 744 (Ind. Ct. App. 1991). In this case, therefore, the encounter between Woods and Officer Nosich was consensual until Woods began fleeing and the officer ordered him to stop, yelling "police." Tr. p. 39. At that point, the investigatory stop began.

The record reveals that Officer Nosich recognized Woods from a previous arrest, his department had been investigating Woods for heroin distribution, multiple confidential informants had stated that Woods was dealing heroin, and Officer Nosich had just received a bulletin from Illinois bearing Woods's photograph and indicating that Woods was a suspected heroin dealer in Illinois. Officer Nosich observed that Woods exited a taxi while talking on a cell phone and holding a balled-up item in one hand. Woods immediately began running after exiting the taxi. In Officer Nosich's years of experience, which includes twenty to fifty narcotics investigations per year, he had never witnessed that behavior before when patrolling that particular area. Therefore, the officer exited his vehicle and approached Woods, asking if he could speak with Woods. Twice, Officer Nosich asked to speak with Woods, and twice, Woods replied, "For what?" Tr. p.

5

38. After the second time, Woods began running away, fleeing from the officer. Officer Nosich repeatedly ordered Woods to stop, referring to Woods by name and identifying himself as a police officer, but Woods continued to flee until the officer caught up to him and deployed his taser, taking Woods into custody.

The United States Supreme Court has determined that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion. Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive as such." Illinois v. Wardlow, 528 U.S. 119, 124 (2000). While Woods was entitled to disregard Officer Nosich and walk away from the initial, consensual encounter, the fact that Woods engaged in "unprovoked flight," id., is a compelling factor to consider when evaluating whether Officer Nosich had reasonable suspicion to support an investigatory stop. In addition to Woods's flight, the officer had prior knowledge of Woods and of the multiple ongoing investigations regarding his drug activity, the officer observed Woods engaging in behavior that was not normal for the area, and the officer saw that Woods had a balled up item in his hand. While perhaps none of these facts would alone rise to the level of reasonable suspicion, when we consider the totality of the circumstances, we find that Officer Nosich had reasonable suspicion and that the stop was permissible. Consequently, the trial court did not err in admitting the evidence seized as a result of the stop.

## II. Sufficiency of the Evidence

Next, Woods argues that the evidence is insufficient to support his conviction. When we review a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor assess witness credibility. McClellan v. State, 13 N.E.3d 546, 548 (Ind. Ct. App. 2014). Instead, we consider only the probative evidence supporting the conviction and the reasonable inferences to be drawn therefrom. Id. If there is substantial evidence of probative value from which a reasonable factfinder could have drawn the conclusion that the defendant was guilty beyond a reasonable doubt, then the verdict will not be disturbed. Id. To establish that Woods committed class B felony dealing in a narcotic drug, the State was required to prove beyond a reasonable doubt that he knowingly or intentionally possessed heroin with the intent to deliver it. I.C. § 35-48-4-1(a)(2)(C). A conviction for possession with intent to deliver may be supported by either direct or circumstantial evidence. Montego v. State, 517 N.E.2d 74, 76 (Ind. 1997).

Here, it is undisputed that Woods possessed heroin. The only question is whether the evidence was sufficient to support the jury's conclusion that Woods had the intent to deliver the heroin. The record reveals that Woods got out of a taxi and immediately began running. He was talking on a cell phone and had a balled-up item in his hand. The item in his hand was later revealed to be a bag full of fifty individual baggies, each containing .06 grams of heroin. Police later recovered a second cell phone from Woods's vehicle.

7

Officer Nosich has been a tactical officer with the Munster Police Department since 2005, conducting between twenty and fifty narcotics investigations per year. He testified that generally, the smaller baggies of heroin that Woods had are referred to as "dime bags" on the street. Tr. p. 58. Each dime bag costs approximately ten dollars. In Officer Nosich's experience, heroin users typically possess four to six dime bags of heroin on any given day. The fact that Woods possessed such a large quantity of the dime bags supports the jury's conclusion that he had intent to deliver the heroin. See Love v. State, 741 N.E.2d 789, 792 (Ind. 2001) (holding that possession of large amounts of a narcotic substance is circumstantial evidence of intent to deliver).

In addition to the sheer quantity of heroin that was in Woods's possession, Officer Nosich testified that, based on his training and experience, the way that the heroin was packaged indicated that it "was definitely for distribution." Tr. p. 65. Moreover, the fact that Woods had two cell phones was further indication, according to Officer Nosich, that he was a drug dealer. Id. at 64.

Officer Nosich also testified regarding the general differences between heroin users and dealers. According to Officer Nosich, heroin users are generally disheveled and sickly in appearance, have sores and track marks on their arms, and tend to be cooperative with law enforcement. Moreover, heroin users typically have their "kit" with them, including needles, a ligature, a spoon, and cotton swabs. Id. at 52. Woods, in contrast, had no sores or track marks, had no paraphernalia on his person or in his vehicle, seemed healthy, and was not cooperative with law enforcement.

8

In sum, the record reveals the following facts: (1) Woods possessed significantly more heroin than an average heroin user would typically possess; (2) the heroin in Woods's possession was packaged for distribution; (3) Woods had a second cell phone, which is typical of drug dealers; and (4) Woods does not have any of the distinguishing characteristics of an average heroin user. A reasonable jury could infer from this evidence that Woods possessed the heroin with intent to deliver it. Woods's arguments to the contrary amount to a request that we reweigh the evidence, which we will not do. We find that the evidence is sufficient to support the conviction.

### III. Sentencing

Finally, Woods argues that the trial court erred by considering a portion of his criminal history to be an aggravating circumstance. A trial court's sentencing decisions are discretionary and entitled to "considerable deference" by the appellate courts. Cardwell v. State, 895 N.E.2d 1219, 1222 (Ind. 2008). A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all"; (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons"; (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration"; or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-91 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007).

Woods's sole sentencing argument essentially amounts to a contention that the trial court erred by considering one portion of his criminal history—a conviction stemming from an incident that occurred after the incident at issue herein. Specifically, after Officer Nosich took Woods into custody, Woods began complaining of chest pains. Officer Nosich transported Woods to the hospital, where he was still considered to be in custody but on a temporary medical leave. Woods absconded from the hospital and failed to return to police custody. In a separate criminal proceeding, he was convicted of class D felony failure to return to lawful detention. The trial court took this conviction into consideration when imposing the sentence in this proceeding. Woods argues, without citation to authority, that the trial court should not have considered this conviction to be part of his criminal history because the offense was committed the day after he committed the offense at issue herein.

Even if we assume solely for argument's sake that the trial court should not have considered this particular conviction to be part of Woods's criminal history, we note that a defendant's criminal history is a valid aggravating factor. Smith v. State, 908 N.E.2d 1251, 1254 (Ind. Ct. App. 2009). Apart from the felony conviction for failing to return to lawful detention, Woods has a lengthy criminal history. The trial court found that Woods has had thirty-eight prior contacts with law enforcement, including two misdemeanor convictions, and one felony conviction for aggravated battery.[2] Over the course of

[2] Woods raises a one-sentence argument that the 2006 aggravated battery conviction should not be considered because it is not similar to the offense at issue herein and is too removed in time. The lack of cogent argument on this issue prevents us from considering it.

10

fourteen years, Woods has been arrested dozens of times in multiple states. See Cotto v. State, 829 N.E.2d 520, 526 (Ind. 2005) (holding that a defendant's arrest record can be considered as part of the sentencing court's assessment of defendant's character in terms of the risk that he or she will reoffend). Furthermore, at the time of sentencing herein, Woods faced a pending case for aggravated identity theft in Illinois. Consequently, even if the failure to return to lawful detention conviction is omitted from Woods's criminal history, his history is lengthy and substantial. We do not find that the trial court erred by considering Woods's criminal history to be an aggravating factor.

The judgment of the trial court is affirmed.

KIRSCH, J., and ROBB, J., concur.